IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE BAY AREA ROOFERS HEALTH & WELFARE TRUST FUND, et al., <br><br> Plaintiffs, <br><br> v. <br><br> ELITE WATERPROOFING & EPOXY FLOORING, <br><br> Defendant. | Case No. 24-cv-08468-MMC <br><br> **ORDER DENYING DEFENDANT'S MOTION TO SET ASIDE DEFAULT AND DEFAULT JUDGMENT; VACATING HEARING** |

Before the Court is defendant Elite Waterproofing & Epoxy Flooring's ("Elite") Motion, filed May 8, 2025, "to Vacate Entry of Default and Default Judgment." Plaintiffs[1] have filed opposition, to which Elite has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court deems the matter suitable for decision on the parties' respective written submissions, VACATES the hearing scheduled for June 20, 2025, and rules as follows.

As set forth in the Court's order granting default judgment, plaintiffs alleged the following in their Complaint:

> (1) [P]laintiffs are the Board of Trustees of five "Trust Funds" and a Trustee of those funds, all of which funds are "employee benefit plan[s]" (see Compl. ¶¶ 10, 12); (2) Elite is an employer that is a party to a collective bargaining agreement titled "Working Agreement" (hereinafter, "the CBA"), as well as a

---

[1] Plaintiffs are the Board of Trustees of the Bay Area Roofers Health & Welfare Trust Fund, Pacific Coast Roofers Pension Plan, East Bay/North Bay Roofers Vacation Trust Fund, Bay Area Counties Roofing Industry Promotion Fund, and Bay Area Counties Roofing Industry Apprenticeship Training Fund, as well as Carlos Opfermann, a Trustee of the funds.

> party to a "Trust Agreement," under which agreements Elite is required to "make contributions" to the Trust Funds on behalf of "certain of [Elite's] employees" (see Compl. ¶¶ 10, 16, 20; see also Compl. Ex. A (CBA), Art. XVIII-XXII, Ex. B (Individual Employer Agreement), and Ex. C (Trust Agreement) ¶ III); (3) under the Trust Agreement, plaintiffs are authorized "to request and review a broad range of business records to determine whether an employer has satisfied all obligations to the Trust Funds" (see Compl. ¶ 20; see also Ex. [C] ¶¶ III.D); (4) on or about October 2, 2023, plaintiffs' auditor notified Elite that "the Trust Funds would be conducting an audit of Elite for the period of January 1, 2022, through December 31, 2022," and requested "six categories of documents," but Elite "never produced any documents to the auditor" (see Compl. ¶ 21); (5) thereafter, on various dates beginning in April 2024, plaintiffs' counsel made written and telephonic demands that Elite produce the requested documents, but Elite did not do so, and had not done so as of November 26, 2024, the date on which plaintiffs filed the instant action (see Compl. ¶¶ 22-24).

(See Order, filed April 10, 2025 [Doc. No. 21] at 2:1-18.) Based on the above, plaintiffs asserted that Elite had violated the terms of the CBA and Trust Agreement, and that, under the Employee Retirement Income Security Act ("ERISA"), they were entitled to an order directing Elite to submit to the requested audit.

After Elite was served with the summons and Complaint, the Clerk of Court, upon request by plaintiffs after the time for Elite to file a response had passed, entered the default of Elite. Thereafter, plaintiffs filed a motion for default judgment, which motion the Court granted by order filed April 10, 2025. The order (1) required Elite "to submit to an audit on no less than two weeks written notice from plaintiffs," and further required Elite to "make available to the auditor, for the period January 1, 2022, through December 31, 2022, the six categories of documents identified in the letter the auditor previously provided to Elite on or about October 2, 2023" (see id. at 3:18-21), (2) afforded plaintiffs leave to request "a potential award of monetary relief in amounts to be determined according to proof . . . if warranted by the results of the audit" and afforded Elite an opportunity to respond to any such request (see id. at 3:22-4:4), (3) awarded plaintiffs fees and costs in the total amount of $6,229 (see id. at 4:5-6), and (4) retained jurisdiction over the matter "for purposes of enforcing the . . . order and amending the judgment to include, following the audit, the sums, if any, determined by the Court to be due and

owing" (see id. at 4:7-9).  The Clerk of Court thereafter entered judgment on the order granting default judgment.  (See Doc. No. 22.)

By the instant motion, Elite seeks an order setting aside the entry of default and the default judgment.

In determining whether to set aside an entry of default or to set aside a default judgment, district courts consider the same factors, namely, (1) "whether the party seeking to set aside the default engaged in culpable conduct that led to the default," (2) "whether it had no meritorious defense," and (3) "whether reopening the default judgment would prejudice the other party."  See United States v. Signed Personal Check No. 730 of Yubran S. Mesle, 615 F. 3d 1085, 1091 (9th Cir. 2010).  The "standard" is "disjunctive," and, consequently, a "finding that any one of [the] factors is true is sufficient reason for the district court to refuse to set aside the default."  See id.

Here, the Court first considers whether Elite has identified a meritorious defense.  In that regard, although "the burden on a party seeking to vacate a default judgment is not extraordinarily heavy," the party "must present specific facts that would constitute a defense."  See TCI Group Life. Ins. Plan v. Knoebber, 244 F.3d 691, 700 (9th Cir. 2001).

The defenses identified by Elite in its motion pertain to the scope of the documents sought by plaintiffs.[2]  In its written demand for an audit, plaintiffs' auditor stated that the Trust Funds sought to examine specified "records for the period January 1, 2022 through December 31, 2022," e.g., "time cards," "[p]ayroll journals," "Federal and California quarterly tax returns, W-2's, and 1099s," "[p]ersonnel records of employees indicating job classifications and dates of hire and termination," and "cash disbursement journals."

---

[2] Elite has attached to its motion a proposed Answer, which pleading, in addition to raising defenses arising from the scope of the documents sought by plaintiffs, lists a number of other defenses, such as "Comparative Negligence," "Equitable Estoppel," "Laches," and "Unclean Hands."  (See Def.'s Mot. Ex. A.)  The proposed answer, however, does not include any facts, let alone the requisite "specific facts," see TCI Group Life Ins. Plan, 244 F.3d at 700, in support of the other defenses.  Indeed, Elite, in its motion, does not contend that any defense unrelated to its challenge to the scope of the requested documents constitutes a meritorious defense.

3

1  (See Wahidi Decl. Ex. A.)  According to Elite, such request was "ultra vires and outside
2  the scope of the documents and information that the Union and the Plaintiff Trust Funds
3  may request pursuant to the CBA and Trust Agreements" and that, under such asserted
4  circumstances, the Trust Funds, rather than Elite, "breached the CBA and Trust
5  Agreements."  (See Def.'s Mot. at 10:4-10.)  In particular, according to a declaration
6  submitted by Elite's owner, plaintiffs' auditor had requested Elite produce "all records for
7  all employees for the entire year of 2022" (see Wahidi Decl. ¶ 5), "not just union
8  employees" (see id. ¶ 3), and, Elite's owner contends, providing the auditor with the
9  requested documents could subject Elite to being "sued" by its employees (see id. ¶ 5).

10  Plaintiffs do not dispute that their auditor's request sought documents for all
11  employees, but argue that such request was not improper and was one with which Elite
12  was obligated to comply.  As set forth below, the Court agrees.

13  First, contrary to Elite's characterization of the request for records of all employees
14  as "ultra vires" and "outside the scope" of the parties' agreements, the Trust Agreement
15  expressly provides that, when conducting an audit, plaintiffs have the power to inspect,
16  inter alia, "time cards for all employees," "individual earnings for all employees," and "all
17  other documents reflecting the hours and wages and/or piecework records of employees
18  (whether or not such documents are privileged)."  (See Compl. Ex. C at III.D.)  Elite cites
19  no language in the Trust Agreement or the CBA that the "employees" identified in the
20  above-quoted provision of the Trust Agreement are limited to employees the employer
21  asserts have performed work covered by the CBA.

22  Moreover, as plaintiffs point out, the Supreme Court already has decided the issue
23  Elite seeks to raise as a defense and has rejected it.  In Central States, Southeast and
24  Southwest Areas Pension Fund v. Central Transport, Inc., 472 U.S. 559 (1985), the
25  Supreme Court considered "whether an employer who participates in a multiemployer
26  plan that is governed by [ERISA] must allow the plan to conduct an audit involving the
27  records of employees who the employer denies are participants in the plan," see id. at
28  561, and concluded the employer must allow the plan to do so, see id. at 582; see also

id. at 566 (considering trust agreement providing trustee with right to inspect employer records that contained "the names and current addresses of [company's] Employees, their Social Security numbers, the hours worked by each Employee and past industry employment history in its files").  In explaining why the employer was required to turn over records of employees it contended were not participants in the union's benefit plans, the Supreme Court held that an audit of the records of all employees "is highly relevant to legitimate trustee concerns," see id. at 568-69, namely, to "verify[ ] that the employer has accurately determined the class of covered employees," see id. at 566-68; see also id. at 568 (finding trustee's request for records of all employees "fully conform[ed] to generally accepted auditing standards").  In sum, the Supreme Court found "there is no reason in ERISA or the plan documents [at issue] why the kind of audit requested [by the trustee] should, as a matter of law, be considered outside the scope of proper plan administration."  See id. at 582.[3]

In attempting to avoid the holding set forth in Central States, Elite observes that the Supreme Court stated it was not "determin[ing] whether ERISA would independently confer on the trustees a right to perform the sort of audit demanded [therein] in the face of trust documents that explicitly limit the audit powers of trustees."  See id. at 581.  The Trust Agreement at issue in the instant action, however, does not contain any language "explicitly," or for that matter, implicitly, limiting the audit powers of the Trust Funds to inspecting only records of employees that an employer contends are performing covered work.  Indeed, in addition to the express right to inspect the employer's records of "all employees," the Trust Agreement provides that plaintiffs have the power to "require any person with obligations or rights [under the Trust Agreement] to furnish, or permit an audit

---

[3] Although, as noted, Elite contends it could be liable to its employees if it were to provide the auditor with the requested information, Elite fails to identify any law under which an employee would have a right to bring such claim.  Moreover, as also noted, the Supreme Court, in Central States, required the employer in that case to provide the trustees with the names, current addresses, social security numbers, and work histories of all its employees.

of, any reasonable information, data, and documents which are pertinent in verifying the accuracy of contributions and acting upon claims for benefits, or which are otherwise pertinent in administering th[e] Trust."  (See Compl. Ex. C at VI.D.)

Accordingly, the Court finds Elite has not identified a meritorious defense, and, consequently, the motion is hereby DENIED.[4]

**IT IS SO ORDERED.**

Dated: June 2, 2025

MAXINE M. CHESNEY
United States District Judge

---

[4] in light of the above finding, the Court does not address herein the parties' respective arguments pertaining to the remaining two factors, namely, whether, as Elite asserts, its failure to appear is the result of negligence rather than culpable conduct, and whether, as plaintiffs assert, they would be prejudiced if the default and default judgment were to be set aside.

6